THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SALIM JOSPEH BARHOUMEH,           )
                                  )
            *Plaintiff*,           )          No. 19 C 4782
      v.                          )
                                  )          Judge Virginia M. Kendall
DENIS R. McDONOUGH, Secretary, United   )
Stated Department of Veterans Affairs,  )
                                  )
            *Defendant*.           )
                                  )

## MEMORANDUM OPINION AND ORDER

Plaintiff Salim Joseph Barhoumeh was a medical support assistant at the Edward Hines

Jr. VA Hospital from 2009 until he was terminated in May 2017. Barhoumeh initiated this

lawsuit against the Department of Veterans Affairs ("VA"), bringing claims of discrimination,

retaliation, hostile workplace, and failure to reasonably accommodate. (Dkt. 20). Now, the VA

moves for summary judgment. (Dkt. 150). For the reasons discussed below, the VA's Motion

[150] is granted.

## BACKGROUND

### I.     Failure to Comply with Local Rules for Summary Judgment

As Northern District of Illinois Local Rule 56.1(a)(2) requires, the VA filed a statement

of material facts in support of its motion for summary judgment. (Dkt. 151). In response,

Barhoumeh was required to submit a "concise response" including, "in the case of any

disagreement, specific references to the affidavits, parts of the record, and other supporting

materials relied upon." LR 56.1(a)(2). In contravention of the local rules, Barhoumeh filed a

response filled with legal arguments and devoid of any reference to the record. (Dkt. 202).

Barhoumeh also filed a non-compliant statement of additional material facts. (Dkt. 201 at 53–

1

73). As with his response, Barhoumeh's statement of additional facts lacks specific reference to the record and includes lengthy statements lumping multiple facts into a single paragraph. (*Id*.) Barhoumeh also filed a duplicative statement of additional facts, which was buried within a nearly 600-page filing. (Dkt. 205 at 57–85).

The local rules make clear that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C). The Court has discretion to require strict compliance with Local Rule 56.1. *See e.g.*, *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635 (7th Cir. 2008).

Because Barhoumeh failed to respond to the VA's statement of material facts with evidence substantiating his denials, this Court accepts the VA's Local Rule 56.1(a)(2) statement as true for purposes of this motion—but only, of course, to the extent supported by evidence. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co*., 735 F.3d 962, 965 (7th Cir. 2013); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010). The Court will disregard the assertions in Barhoumeh's Rule 53(b)(3) statement of additional facts to the extent those assertions lack evidentiary support and the Court will disregard any additional assertions presented in the later filed, duplicative statement of additional facts. *See Klein v. Wexford Health Sources, Inc.*, 2019 WL 2435850, at *2 (N.D. Ill. June 11, 2019); *Church v. Church Mut. Ins. Co.*, 2016 WL 772787, at *1 (N.D. Ill.

2

Feb. 29, 2016), *aff'd sub nom. Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607 (7th Cir. 2017) ("The non-movant's submission of a Local Rule 56.1(b)(3)(C) statement of additional facts does not and could not properly controvert each numbered paragraph of the movant's Local Rule 56.1(a)(3) statement, as it does not sync up with the factual assertions in the Local Rule 56.1(a)(3) statement." (cleaned up)).

This is by no means an automatic grant of the VA's motion. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (noting the movant "must still demonstrate that it is entitled to judgment as a matter of law"). The Court will thus recite the facts as favorably to Barhoumeh as the record and Local Rule 56.1 permit, before determining whether the VA is entitled to judgment on those facts. *Hudson v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2019 WL 4261581, at *3 (N.D. Ill. Sept. 9, 2019) (citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)).

## II.  Material Facts

### A.  Barhoumeh's Employment at the Hines VA

Plaintiff Barhoumeh began working at the Edward Hines Jr. VA Hospital in 2009 as a medical support assistant. (Dkt. 202 at ¶ 1). He was promoted to advanced medical support assistant in 2015 and maintained that role until his termination in May 2017. (*Id*. at ¶ 2). As an advanced medical support assistant, Barhoumeh's primary responsibilities included verifying eligibility for VA benefits, responding to inquiries from patients, updating health insurance and other patient information, tracking the need for follow-up care, and coordinating with other VA and non-VA facilities. (*Id*. at ¶ 3).

**B. The VA's Leave Policy**

At all times relevant to this action, the VA maintained an Absence and Leave Policy ("Leave Policy") setting forth regulations governing employees' absence from work. (Dkt. 151-3). Barhoumeh, as an employee, was subject to this policy. (Dkt. 202 at ¶ 4). In pertinent part, the Leave Policy required employees to obtain approval in advance of any anticipated absence from work. (*Id*. at ¶ 5). In the event of an unexpected illness, employees were required to request leave no later than two hours after the beginning of their shift. (*Id*. at ¶ 6). For anticipated absences longer than one day, employees were required to provide their supervisor with the anticipated date of their return to work. (*Id*.). For anticipated absences longer than three days, employees were required to submit medical documentation in support of their leave request. (*Id*. at ¶ 7).

Employees taking FMLA leave were required to provide notice of their "intent to take FMLA leave not less than 30 days before" their leave was scheduled to begin "or as soon as practicable." (Dkt. 151-3 at 16). Supervisors were not permitted to assume approval of an FMLA request. (*Id*. at 17). Instead, supervisors were required to request medical certification of the requesting employee's health condition. (*Id*.).

The Leave Policy also noted that unauthorized absence from work could render an employee "absent without leave," which could result in disciplinary action. (Dkt. 202 at ¶ 8).

**C. Barhoumeh's Leave and Reasonable Accommodation Request**

Barhoumeh suffers from a nerve condition that impairs his ability to stand and walk. (*Id*. at ¶ 9). As such, Barhoumeh obtained authorization to use 480 hours of leave under the Family Medical Leave Act ("FMLA") between August 2015 and August 2016. (*Id*. at ¶ 10). The medical certification from Barhoumeh's doctor noted that Barhoumeh may need to use one day of FMLA

4

leave per week to attend physical therapy. (*Id*. at ¶ 11). Although the medical certification noted that Barhoumeh's condition may impact him one time per week and one day per episode, Barhoumeh regularly missed work more than one day per week. (*Id*. at ¶¶ 11–13).

When Barhoumeh first started using his FMLA leave in August 2015, he would call his supervisor to request leave within two hours of the beginning of his shift as required by the Leave Policy. (*Id*. at ¶ 17). As time went on, however, he would either call outside of the two-hour window or not at all. (*Id*.). In the spring of 2016, Shenetia Barnes became Barhoumeh's direct supervisor. (*Id*. at ¶ 18). On March 28, 2016, Barnes gave Barhoumeh a memo instructing him to call her directly if he needed to make an unscheduled leave request. (*Id*. at ¶ 19).

About a month later, on April 26, Barnes gave Barhoumeh a memo about his use of FMLA leave. (*Id*. at ¶ 21). The memo informed Barhoumeh that his use of FMLA leave exceeded "the frequency and duration previously indicated" by his doctor. (Dkt. 151-8 at 2). As such, the memo instructed Barhoumeh to recertify his FMLA condition by providing human resources with updated documentation supporting his increased use of FMLA leave. (*Id*.). The memo further noted that even when taking FMLA leave, Barhoumeh was still "responsible for properly requesting leave" and communicating if he was "requesting leave in connection with the medical condition" identified in his medical certification. (*Id*.). The memo also flagged that failure to recertify his FMLA condition by May 17 could result in a discontinuation of his FMLA leave authorization. (*Id*. at 3). Human resources also had a meeting with Barhoumeh in April 2016 to discuss his use of and clarify the boundaries of his FMLA leave. (Dk. 151-6 at 13–14).

Nevertheless, Barhoumeh did not recertify his FMLA condition by the May 17 deadline. (Dkt. 202 at ¶ 26). Instead, Barhoumeh filed an EEO complaint in June, alleging that he had been subjected to discrimination, a hostile work environment, unwarranted AWOL designations, and

the VA's failure to reasonably accommodate his disability. (Dkt. 151-9 at 2). In July, Barhoumeh stopped going to work altogether. (Dkt. 202 at ¶ 28).

On August 23, 2016, the VA sent Barhoumeh an Order to Return to Duty, notifying Barhoumeh that he had been "absent from work consecutively since [] July 29, 2016"; ordering him to return to work or contact his supervisor; and informing him that until he obtained approval to be absent from work, he would be considered AWOL. (Dkt. 151-10 at 22–24). The letter explained that although Barhoumeh requested leave via email on various occasions, he had not followed proper procedure for requesting leave and, as such, his requests had not been approved. (*Id.*). The letter further stated that failure to properly request leave may result in disciplinary action "up to and including removal from federal service." (*Id.*).

On September 13, the VA sent Barhoumeh another Order to Return to Duty, informing him that he had been absent from work consecutively since September 8 and instructing him to return to work. (*Id.* at 48). The letter also reminded Barhoumeh of his obligation to adhere to the Leave Policy and the consequences of being AWOL. (*Id.*).

In October, the reasonable accommodation coordinator at the Hines VA, Jaiona Parker, emailed Barhoumeh at his work address, asking whether he was interested in requesting an accommodation. (Dkt. 151-11). Later that month, Parker mailed a letter to Barhoumeh, alerting him of her earlier email and asking whether he was still interested in pursuing a reasonable accommodation request. (Dkt. 151-12 at 2). The letter offered to schedule a time to meet and discuss Barhoumeh's request and flagged that if Barhoumeh did not respond, Parker would have to close his case for lack of participation in the interactive process. (*Id.*).

On October 28, 2016, after receiving an updated medical form from Barhoumeh's doctor, a human resource benefits specialist emailed Barhoumeh at his personal address about his FMLA

request. (Dkt. 202 at 39). The email informed Barhoumeh that the VA could not proceed with his request because the paperwork was incomplete and enumerated the steps Barhoumeh would need to take to properly request FMLA leave. (Dkt. 151-13 at 2). Barhoumeh sent two emails in response—one on October 31, 2016, and one on November 1, 2016—neither of which provided the information required to authorize his FMLA leave. (Dkt. 202 at ¶ 41).

In November 2016, after having a conversation with Barhoumeh, the benefits specialist emailed Barhoumeh again, once more attaching various forms for requesting leave. (*Id*. at ¶ 42). In December, the new reasonable accommodation coordinator, Dana Cheshareck, sent Barhoumeh a letter, following up on Parker's prior inquiries into Barhoumeh's interest in a reasonable accommodation. (*Id*. at ¶ 43). Cheshareck's letter notified Barhoumeh of Parker's October 19 email requesting his input in the reasonable accommodation process and stated that because Barhoumeh had not responded, Cheshareck would close his case due to lack of participation. (*Id*. at ¶¶ 43–44).

On February 1, 2017, the VA sent Barhoumeh a third Order to Return to Duty, informing him that he had been absent from work consecutively since September 8 and that the VA mailed him two prior orders directing his return to work. (Dkt. 151-10 at 3). Like the others, this letter informed Barhoumeh that he had neither requested leave nor received approval to be absent from work and, as such, his absences had not been approved. (*Id*.). On February 9, Barnes emailed Barhoumeh at his personal email address, attaching the three previous return to duty letters, and informed him of his AWOL status. (*Id*. at 2). The letter also instructed Barhoumeh to return to work or contact Barnes or human resources. (*Id*.).

On February 14, 2017, Barhoumeh emailed Cheshareck with an accommodation request form, asking for permission to work from home. (Dkt. 202 at ¶ 50). Cheshareck responded,

asking Barhoumeh to submit medical documentation in support of his accommodation request and informing him that he could not have an interim accommodation without medical documentation. (*Id*. at ¶¶ 51–52).

### D. Barhoumeh's Termination

On March 14, 2017, due to his extended absence without leave, the VA sent Barhoumeh a letter proposing his termination. (Dkt. 151-21 at 2–5). The letter enumerated 25 specific instances in which Barhoumeh had been deemed AWOL. (*Id*.). The VA informed Barhoumeh of his option to respond, stating why he believed his termination should not be carried out. (*Id*. at 5). The VA also communicated that the final decision about his termination had not yet been made and that Barhoumeh would "remain in an active duty status during the period of advance notice." (*Id*.).

Also on March 14, Barhoumeh submitted medical documentation in support of his accommodation request. (Dkt. 202 at ¶ 55). The form explained that Barhoumeh's disability made it difficult to walk and his medication sometimes impaired his ability to drive, thus making it difficult to get to work. (Dkt. 151-22 at 2–3).

A few days later, Cheshareck emailed Barhoumeh, asking him to fill out an authorization form so that she could contact his doctor directly and obtain clarification on the information provided. (Dkt. 202 at ¶ 56). Not receiving a response, Cheshareck emailed Barhoumeh two more times—on March 22 and March 23—requesting authorization to contact his doctor. (*Id*. at ¶ 58). On March 30, after speaking with Barhoumeh by phone, Cheshareck followed up with him again by email, once more asking him to fill out the authorization form so that she could obtain clarification from his doctor. (*Id*. at ¶ 60). Cheshareck also noted that, during their phone conversation, Barhoumeh indicated that he had new restrictions on his ability to work that had

not been included in his February 2017 request for accommodation. (*Id*. at ¶ 61). Cheshareck explained that if Barhoumeh wanted an accommodation for these new restrictions, he would need to submit a new request for accommodation and supporting medical documentation. (*Id*.). Barhoumeh did not provide Cheshareck with the forms authorizing her to contact his doctor. (*Id*. at ¶ 62). Instead, he submitted a new medical certification from a different doctor on April 13, 2017. (*Id*. at ¶ 63). A week later, Barhoumeh submitted an authorization form, giving the VA permission to contact his new doctor directly. (*Id*. at ¶ 64).

On May 2, 2017, before Cheshareck could confer with Barhoumeh's new doctor, the VA terminated Barhoumeh's employment. (*Id*. at ¶ 65). The termination letter explained that Barhoumeh had been AWOL continuously since September 2016 and for nearly 1,000 hours cumulatively since August 2016. (Dkt. 151-26 at 2). The letter noted that despite repeatedly receiving instruction on how to complete his FMLA request, Barhoumeh did not do so. (*Id*.). In pertinent part, the letter provided:

> Your email responses document your intent not to return to work. You repeatedly say that you will not return. Some emails claim that you resigned. You replied that you completed and submitted a reasonable accommodation request on April 21, 2017. However, you did not turn in a completed request during the period for which you are charged with AWOL. Your successful submission of a reasonable accommodation request and your past FMLA approval demonstrates your capability but unwillingness to turn in the requested applications during the charged AWOL period.

(*Id*.). Given Barhoumeh's termination, Cheshareck administratively closed his accommodation request on May 2, 2017. (Dkt. 202 at ¶ 67).

### E. EEO and Court Proceedings

As mentioned, Barhoumeh originally submitted his EEO complaint in June 2016. (*Id*. at ¶ 27). As amended, Barhoumeh alleged that the VA failed to accommodate his disability and subjected him to a hostile work environment by asking him to submit updated FMLA

documents, deeming him AWOL, and directing him to return to work. (*Id.* at ¶ 69). On January 8, 2018, the VA's Office of Employment Discrimination Complaint Adjudication issued a final agency decision on Barhoumeh's claims stemming from his termination (his "mixed" claims). (*Id.* at ¶ 70). The decision found no evidence of discrimination or retaliation and explained that Barhoumeh could seek further relief within 30 days, either by appealing to the MSPB or by filing suit in federal court. (*Id.* at ¶ 71). Barhoumeh never submitted an appeal to the MSPB, nor did he file a civil suit within the allotted 30-day period. (*Id.* at ¶ 72).

On October 12, 2018, the VA's Office of Employment Discrimination Complaint Adjudication issued a final agency decision on Barhoumeh's remaining claims (his "non-mixed" claims), concluding that Barhoumeh had shown neither a failure to accommodate nor the existence of a hostile work environment based on disability, national origin, or EEO activity. (*Id.* at ¶ 73). The decision explained that Barhoumeh could seek further relief by appealing to the EEOC's Office of Federal Operations within 30 days, or by filing suit in federal district court within 90 days. (*Id.* at ¶ 74). Barhoumeh submitted an appeal to the EEOC's Office of Federal Operations in September 2018 and, later, filed this lawsuit in July 2019. (*Id.* at ¶¶ 75–76). Because Barhoumeh filed this lawsuit, the EEOC's Office of Federal Operations dismissed his administrative appeal. (*Id.* at ¶ 77).

### **LEGAL STANDARD**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275

F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

## DISCUSSION

### I.      Untimely Termination Claims

In its Final Agency Decision, issued on January 8, 2018, the VA's Office of Employment Discrimination Complaint Adjudication determined that Barhoumeh failed to prove that his termination was the result of discrimination or retaliation. (Dkt. 1-1 at 6). The VA further notified Barhoumeh of his right to appeal the decision to the MSPB or file civil suit within 30 days of receiving the FAD. (*Id.* at 14). Barhoumeh admits receiving the letter, but he never appealed to the MSPB and he did not file suit in federal court until July 2019. (Dkt. 202 at ¶¶ 75–76). Accordingly, Barhoumeh's termination-related claims are time-barred.

### II.     Hostile Work Environment Claim

To prevail on a hostile work environment claim, a plaintiff must show that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 714 (7th Cir. 2021). Because "[a] hostile work environment is based on the totality of the circumstances," it cannot be determined with "a mathematically precise test." *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021). Still, when proved, one thing is certain: "the work environment was so pervaded by discrimination

that the terms and conditions of employment were altered." *Id*. (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013)).

Based on the record, Barhoumeh cannot prevail on this claim for three reasons. First, his claim of a hostile work environment is entirely subjective and based exclusively on his own perceptions. Barhoumeh asserts that the VA subjected him to a hostile work environment by asking him to submit updated FMLA paperwork, deeming him AWOL, and sending him return-to-duty letters. These regular employee personnel procedures and communications do not remotely qualify as objectively offensive. Even Barhoumeh acknowledges that the complained of requests for paperwork are "standard procedure in many workplaces to ensure clarity and proper documentation of leave requests." (Dkt. 202 at ¶ 24).

Second, there is no indication from anything in the record that the complained of actions had anything to do with Barhoumeh's membership in a protected class. Barhoumeh does not identify any reference whatsoever to his national origin. *Cf. Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 950 (7th Cir.2005) (hostile work environment found where the plaintiff was subjected to graffiti calling him a "spic" and "wetback," directing him to "go back to Mexico," and proclaiming "KKK" and "white power," even though each individual epithet appeared in isolation). The only references in the record to Barhoumeh's disability are in conjunction with the VA's efforts to authorize and facilitate proper use of Barhoumeh's FMLA leave.

Third, there is likewise nothing showing that the alleged conduct was pervasive or severe. Whether conduct is severe or pervasive "depends on contextual factors such as the frequency of improper conduct, its severity, whether it is physically threatening or humiliating (as opposed to a mere offensive utterance), and whether it unreasonably interferes with the employee's work performance." *Mahran*, 12 F.4th at 715 (internal citations omitted). While Barhoumeh may have

felt that the process for authorizing FMLA leave was onerous, his subjective feelings do not rise to the level of actionable hostility. Accordingly, this Court finds that no reasonable trier of fact could find Barhoumeh was subjected to a hostile work environment.

### III.    Constructive Discharge Claim

Barhoumeh asserts that he was forced to separate from the VA because of the hostility and retaliation he experienced at work. As a threshold matter, Barhoumeh failed to exhaust his administrative remedies by not making a claim of constructive discharge in his formal EEO complaint in June 2016, thus he may not bring such a claim now. *See Pierri v. Medline Indus., Inc.*, 970 F.3d 803, 809 (7th Cir. 2020) (plaintiff's failure to include an allegation in his EEOC complaint foreclosed his ability to pursue it in court). Even if this Court were to find that a constructive discharge claim is encompassed within Barhoumeh's other claims, it is simply unsubstantiated in the record such that it could survive summary judgment.

Constructive discharge occurs when a plaintiff shows that he was forced to resign because his working conditions had become unbearable from the standpoint of the reasonable employee. *Wright v. Illinois Dep't of Child. & Fam. Servs*., 798 F.3d 513, 527 (7th Cir. 2015) The Seventh Circuit recognizes two forms of constructive discharge. *Id*. The first requires a plaintiff to show that he suffered discriminatory harassment that is even more egregious than the high standard required to show a hostile work environment. *Id*. The second form of constructive discharge occurs, "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that [he] will be terminated." *Id*. (quoting *EEOC v. Univ. of Chicago Hosps*., 276 F.3d 326, 332 (7th Cir.2002)). "In this situation, if the plaintiff employee resigns, the employer's conduct may amount to constructive discharge. This form of constructive discharge, however, does not eliminate the need for the plaintiff to show that his working

13

conditions had become intolerable." *EEOC v. Univ. of Chicago Hosps*., 276 F.3d 326, 332 (7th Cir. 2002). *See generally Bragg v. Navistar Int'l Transp. Corp*., 164 F.3d 373, 377 (7th Cir. 1998) ("Constructive discharge exists to give Title VII protection to a plaintiff who decides to quit rather than wait around to be fired.")

Barhoumeh cannot prevail in either form of constructive discharge. First, this Court's conclusion that Barhoumeh cannot establish a basis for a hostile work environment claim compels the conclusion that the VA is entitled to summary judgment on his constructive discharge claim as well. Second, Barhoumeh claims he stopped accessing his work email no later than October 2016 due to his constructive discharge. (Dkt. 202 at ¶ 36). The record does not support a finding that the VA communicated to Barhoumeh that he would be terminated prior to October 2016. While the August and September 2016 Orders to Return to Duty mention that Barhoumeh *could* be terminated for failing to properly request leave, this caution is couched in a letter asking Barhoumeh to return to his job. Indeed, the VA did not issue its proposed removal letter until March 2017—six months after Barhoumeh stopped going to work. Further, Barhoumeh has not shown that his working conditions became intolerable. Accordingly, the VA is entitled to summary judgment on this claim.

## IV. Discrimination Claims

### A. Failure to Accommodate

Barhoumeh brings his failure to accommodate claims under two statutes—the ADA and the Rehabilitation Act—but the legal standard is the same under both. *See Kraus v. Shinseki*, 846 F. Supp. 2d 936, 947 (N.D. Ill. 2012) (noting the Rehabilitation Act "prohibits discrimination in the same manner as the [ADA] and uses the same standards"); *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002) ("This Court looks to the standards applied under the [ADA] to

determine whether a violation of the Rehab[ilitation] Act occurs in the employment context."). Under the ADA, an employer's failure to make reasonable accommodations for a known disability amounts to unlawful discrimination. 42 U.S.C. § b(5)(A). An employer must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A).

To support a claim for failure to accommodate, Barhoumeh must demonstrate: (1) he is a qualified individual with a disability; (2) the VA was aware of his disability; and (3) the VA failed to reasonably accommodate his disability. *Sansone v. Brennan*, 917 F.3d 975, 979 (7th Cir. 2019). To satisfy the third element, the ADA requires employers and employees to engage in an interactive process to determine a reasonable accommodation. *Id*. Although failure to engage in the interactive process cannot give rise to a claim for relief, if a "reasonable accommodation was possible and the employer did not offer it, the third element of a failure to accommodate claim turns on the interactive process requirement." *Id*. at 980. (internal citations omitted). In such circumstances, "responsibility will lie with the party that caused the breakdown." *Id*.

Here, the VA reached out to Barhoumeh on multiple occasions to see if he was interested in pursuing an accommodation. Despite not receiving a response for over three months, and Barhoumeh's continued absence from work, the VA nevertheless engaged Barhoumeh when he did eventually request an accommodation. Even then Barhoumeh dragged his feet, submitting incomplete documentation, responding with great delays, and withholding permission for the reasonable accommodation coordinator to contact his doctor. While a reasonable accommodation

15

surely was possible, this Court finds that Barhoumeh caused the breakdown in the interactive process. Accordingly, the VA is entitled to summary judgment on this claim.

### B. Adverse Action Claims

To prevail on a claim for disability-based discrimination, a plaintiff must establish: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability. *Shell v. Burlington N. Santa Fe Railway Co.*, 941 F.3d 331, 335 (7th Cir. 2019). To prevail on a claim for discrimination on the basis of national origin, a plaintiff must show that "(1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably." *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023).

An adverse employment action "generally fall[s] into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) (quoting *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011)).

Under the *McDonnell Douglas* burden-shifting framework if Barhoumeh successfully establishes a *prima facie* case, "the [VA] must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David v. Bd. of Trustees of Community College District No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (quoting *Andrews v.*

16

*CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)); *see also Nawrot v. CPC Intern.*, 277 F.3d 896, 905 (7th Cir. 2002). "In determining whether an employer's stated reason is pretextual, [t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Harper v. C.R. England, Inc.*, 687 F.3d 297, 311 (7th Cir. 2012) (internal quotation marks omitted) (citation omitted).

As an initial matter, this Court's conclusion that the record does not support a finding that Barhoumeh was subject to an actionable adverse action compels the conclusion that the VA is entitled to summary judgment on his adverse action discrimination claim as well. Even if Barhoumeh could establish a *prima facie* case of discrimination, he cannot establish pretext as required to support a disability-based discrimination claim. Charging absenteeism in a proposed removal letter and ultimately terminating an employee for no response and no return to work are legitimate actions by the VA. There is no evidence in the record to support a notion that these actions were not the genuine or honest reasons for Barhoumeh's dismissal.

Barhoumeh also does not offer any evidence of similarly situated employees who received more favorable treatment as needed to support a national origin discrimination claim. Accordingly, the VA is entitled to summary judgment on Barhoumeh's discrimination claims.

## V. Retaliation Claims

To prevail on a Title VII retaliation claims, a plaintiff must prove that "1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). A plaintiff can establish a *prima facie* case of retaliation under either the direct or indirect method of proof. *Khowaja v. Sessions*, 893 F.3d

1010, 1014 (7th Cir. 2018). Barhoumeh may offer direct evidence that points explicitly to a discriminatory reason for the action or by presenting circumstantial evidence that "points directly" to an impermissible reason for the materially adverse action. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2016); *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). Under the well-established *McDonnell Douglas* indirect or burden-shifting framework, Barhoumeh may also prevail by demonstrating that: (1) he engaged in a statutorily protected activity; (2) he performed his job to the VA's legitimate expectations; (3) he suffered an adverse employment action; and (4) the VA treated similarly situated employees that did not engage in statutorily protected activity more favorably. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018).

A materially adverse action can be "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007). But a materially adverse action "need not be one that affects the terms and conditions of employment," it can simply be an action "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (internal citations omitted). Adverse actions do not include acts that are no more "than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017).

Barhoumeh contends that the VA subjected him to an adverse employment action by requiring him to submit documentation in support of his FMLA and reasonable accommodation requests, deeming him AWOL, and ultimately terminating him. As an initial matter, Barhoumeh has not explained how the VA's requests for documentation were anything more than mere inconveniences.

As for his AWOL designation and termination, Barhoumeh fails to provide adequate evidence to support the second or fourth prongs of *McDonnell Douglas* burden-shifting framework. Barhoumeh did not meet the VA's legitimate expectations and his numerous, lengthy, and unapproved absences violated VA policies. Even if Barhoumeh were to satisfy the second prong by meeting the VA's legitimate expectations for an employee, he puts forward no evidence of a similarly situated comparator treated better than him.

If Barhoumeh established a *prima facie* case, the burden would shift to the VA to provide a "legitimate, nondiscriminatory reason" for its actions. *Atanus*, 520 F.3d at 677. After doing so, Barhoumeh would bear the burden to provide evidence showing the articulated reason is pretext for retaliation. *Id*. Barhoumeh has not demonstrated the reasons provided by the VA for his AWOL designation and termination are pretextual. Barhoumeh admits that he was in fact continuously absent from work in the 9 months preceding his termination. (Dkt. 151-1 at 41–42).

Regardless, the Court need not decide the issue of pretext since Barhoumeh is unable to establish a *prima facie* case at the outset as his actions did not meet the legitimate expectations of the VA and he has not put forward any similarly situated comparators. "Under the indirect method of proof, failure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim." *King v. McDonough*, 2022 WL 4551895, at *10 (N.D. Ill. Sept.

29, 2022) (Kendall, J.) (quoting *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 560 (7th Cir. 2004)).

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment [150] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: March 28, 2024

20